```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

| | |
|---|---|
| MICHAEL BAISDEN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:08-CV-00451 |
| § | |
| I'M READY PRODUCTIONS, INC., § | |
| IMAGE ENTERTAINMENT, INC., and § | |
| A.L.W. ENTERTAINMENT, INC., § | |
| § | |
| Defendants. § | |
| § | |

**MEMORANDUM OPINION**

Pending before the court is the Motion to Exclude, in Part, the Testimony of Plaintiff's Expert on <u>Daubert</u>[1] Grounds (Docket Entry No. 176) filed by I'm Ready Productions, Inc., ("IRP"), Image Entertainment, Inc., ("Image"), A.L.W. Entertainment, Inc., Je'Caryous Johnson ("Johnson"), and Gary Guidry ("Guidry") (collectively "Defendants"). The court has considered the motion, the response thereto, the expert report, and the applicable law. For reasons explained below, the court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

**I. Case Background**

This action deals with two books authored by Plaintiff, <u>The Maintenance Man</u> and <u>Men Cry in the Dark</u>. Plaintiff alleged copyright infringement and several state common law claims.

---

[1] <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).

A.  **Factual History**[2]

In 2001 and 2002, Plaintiff and IRP entered into agreements pursuant to which IRP adopted these two novels into live performance plays (collectively "the Stageplays").  The agreements provided for payment to Plaintiff of a portion of the ticket and merchandise sales related to the Stageplays.  IRP produced and toured the Stageplays, the Men Cry in the Dark stageplay toured throughout 2002 and again in late 2005 and The Maintenance Man stageplay ran from January to May 2003.  IRP claimed derivative work copyrights on the Stageplays.

IRP co-produced video recordings of live performances of the Stageplays and entered into an agreement with Image to distribute them.  Image began distributing the video recordings in February 2007.  Defendants neither paid Plaintiff royalties for the sale of video recordings nor provided Plaintiff with an accounting of those sales.

In June 2007, the Farcor Baisden Partnership entered into an option agreement with Behave Productions, Inc., to develop one or more full-length motion pictures based on The Maintenance Man: Sometimes Women Need a Little Fix and The Maintenance Man: It's Midnight, Do You Know Where Your Woman is?.  Producer and writer agreements were executed simultaneously.  Guidry learned of the

---

[2] For a more detailed account of the facts leading up to this lawsuit, see Memorandum and Recommendation, Docket Entry No. 126, pp. 2-15.

option contract, and IRP demanded a $300,000 payment in connection with the sale of The Maintenance Man movie rights.

**B.  Procedural History**

On February 7, 2008, Plaintiff filed a lawsuit against Defendants for multiple claims related to their alleged violations of Plaintiff's intellectual property and contract rights related solely to The Maintenance Man agreement and source novel.  Image filed a crossclaim for indemnification against IRP, and IRP filed a counterclaim against Plaintiff.  Since then, Image has dropped its crossclaim.  Plaintiff amended his complaint twice, adding claims concerning Men Cry in the Dark for the first time in his second amended complaint on November 4, 2008.

Upon consideration of Defendants' motion for partial summary judgment in September 2009, the court narrowed Plaintiff's claims to:  1) copyright infringement for sales of The Maintenance Man stageplay video recordings on or after July 25, 2005, (or December 29, 2005, depending on a factual determination related to whether Plaintiff and IRP entered into a second contract concerning The Maintenance Man stageplay); 2) copyright infringement for Men Cry in the Dark stageplay live performances and sales of video recordings on and after November 4, 2005; 3) breach of contract for The Maintenance Man stageplay video recordings sold after February 7, 2004.  Defendants did not file for summary judgment on Plaintiff's unfair competition and civil conspiracy claims; thus,

3

those claims remain in the lawsuit as well.

In November 2009, Plaintiff filed a motion for leave to add new parties, which the court granted in part and denied in part. The court allowed Plaintiff to add Johnson and Guidry as parties only to the extent of allegations of vicarious liability for the claims that survived summary judgment against IRP. Defendants' live answer and counterclaim seeks various declarations and alleges breach of contract, quantum meruit, and tortious interference claims.

### C. **Plaintiff's Expert and his Testimony**

Plaintiff's expert, Scott A. Barnes ("Barnes"), is a certified public accountant who is also certified in financial forensics and has twenty-three years experience "assessing the financial issues surrounding complex and sophisticated accounting issues, merger and acquisition transactions, business valuation and industry and competitor analyses."[3] Barnes' experience includes a long history of providing expert testimony on damages in state and federal litigation involving, inter alia, claims of intellectual property infringement.[4]

His previous consulting engagements include damage assessment and valuation of intellectual property in cases involving

---

[3] Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, Attach. 1, Barnes' curriculum vitae, p. 1.

[4] Id.

international telecommunications equipment, medical equipment, semiconductor technology, oil field equipment, computer software, hand-held computer game technology, golf equipment, and copyrights in the entertainment industry.[5] In exactly how many entertainment cases Barnes has served as an expert witness is not readily apparent from his curriculum vitae.

Barnes filed a preliminary expert report on November 18, 2008, concerning:

> (1) the estimated author compensation due under the alleged Performance Production Agreement related to the novels entitled The Maintenance Man and Men Cry in the Dark, (2) the estimated gross revenues and net profit realized from the alleged copyright infringement of the novel entitled Men Cry in the Dark and (3) the estimated gross revenues and net profit realized from the alleged copyright infringement of the above novels from the distribution of [digital video discs ("DVDs")] and/or similar recorded media subsequent to the alleged termination of the relevant Performance Production Agreement at issue in this matter.[6]

In April 2009, Barnes filed another report offering:

> opinions related to the entitled accounting established in the respective compensation sections of (1) the Agreement Regarding Ownership of Rights Associated With The Writing and Production of Men Cry In The Dark executed on or about March 9, 2001, (2) the Agreement Regarding Ownership of Rights Associated With the Writing of the Stageplay and Live Performance Production of The Maintenance Man executed on or about July 25, 2002[,] and (3) the Agreement Regarding Ownership of Rights Associated With The Writing and Production of The

---

[5] Id. at pp. 2-3.

[6] Defendants' Sealed Appendix, Docket Entry No. 179, Preliminary Report of Barnes dated Nov. 18, 2008, p. 2.

Maintenance Man executed on or about December 2002.[7]

In a supplemental report filed in December 2009, Barnes quantified the estimated damages associated with each of Plaintiff's claims.[8]  Of particular importance to the pending motion are Barnes' opinions regarding copyright infringement damages.  To assist in the calculation, Barnes consulted Intellectual Property Damages in the Entertainment Industry (Litigation Services Handbook 4th Ed.) and Internet Movie Database (Pro Edition), among other entertainment industry data sources.[9]

Barnes opined that Defendants' alleged copyright infringement "resulted in the expiration, cancellation and/or cessation of the then existing agreements with respect to the development of a film based on The Maintenance Man novels[10] and the lost film development

---

[7] Defendants' Sealed Appendix, Docket Entry No. 179, Expert Report of Barnes dated Apr. 15, 2009, p. 2.

[8] See Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, p. 2.

[9] See Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, Attach. 2, Documents Considered List, pp. 11-12.

[10] According to Barnes, Baisden wrote two novels bearing the title The Maintenance Man, to wit, The Maintenance Man: Sometimes Women Need a Little Fix and The Maintenance Man: It's Midnight, Do You Know Where Your Woman is?. See Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, p. 2 n.2.  The only other reference to two novels of the same title, located by the court's perusal of the record, is the option contract dated June 14, 2007.  See Defendants' Sealed Appendix, Docket Entry No. 179, Option and Acquisition of Rights contract dated June 14. 2007, p. 1.  Plaintiff's live pleading, the Producer Agreement dated June 14, 2007, and the Writer's Agreement dated June 14, 2007, mention only one novel entitled The Maintenance Man.  See Plaintiff's Corrected Third Amended Complaint, Docket Entry No. 154, ¶ 9; Defendants' Sealed Appendix, Docket Entry No. 179, Producer Agreement dated June 14, 2007, p. 1; Defendants' Sealed Appendix, Docket Entry No. 179, Writer's Agreement dated June 14, 2007, p. 1.

opportunity related to the novel Men Cry in the Dark."[11] Additionally, according to Barnes, Plaintiff claimed that infringement of the copyrights of these three novels "impacted the ability to develop feature films on his other two novels, which include God's Gift to Women and Never Satisfied: How and Why Men Cheat."[12] Barnes estimated Plaintiff's damages related to these five feature films as follows:

1)   The Maintenance Man – $805,000

2    The Maintenance Man (sequel) – $5,334,468

3)   Men Cry in the Dark – $3,580,009

4)   God's Gift to Women – $2,261,097

5)   How and Why Men Cheat – $1,428,085.[13]

Barnes' report totals damages for the five movies at $13,408,659.[14]

Barnes provided an estimation of net profits realized by Defendants resulting from the alleged infringement as an added element of the copyright infringement damages.[15] This valuation included net profits from the sale of Maintenance Man merchandise and DVDs from February 7, 2005, to the date of Barnes' supplemental

---

[11]   Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, p. 2.

[12]   Id. at p. 4.

[13]   Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, Attach. 25, summary of Baisden's damage claims.

[14]   See id.

[15]   See Defendants' Sealed Appendix, Docket Entry No. 179, Supplemental Report of Barnes dated Dec. 24, 2009, pp. 4-5.

report and net profits from the sale of Men Cry in the Dark merchandise and DVDs from November 4, 2005, to the date of Barnes' supplemental report for a total profit of more than $1.1 million.[16] Additionally, Barnes reviewed IRP's general ledger and determined that revenues for merchandise sales may have significantly exceeded the amounts disclosed.[17]

## II. Expert Testimony Legal Standard

The federal rules of evidence and related case law require that an expert be qualified and that the expert's testimony be both reliable and relevant. See Fed. R. Evid. 702;[18] Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007). The burden of establishing this predicate for the expert's testimony naturally falls on the party producing the expert. Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The trial court determines whether that party has met its burden. See Fed. Rule Evid. 104(a);

---

[16] See id. at pp. 4-5, Attach. 20.1, net profit chart, Attach. 23, net profit chart, Attach. 25, summary of Baisden's damage claims.

[17] See id. at p. 5, Attach. 21, Analysis of IRP Merchandise Sales Recorded in General Ledger.

[18] Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Moore, 151 F.3d at 276; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 592, 597 (1993).

The expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Testimony that is not scientific in nature is better judged by examining whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered. See Fed. R. Evid. 702; Kumho Tire Co., 526 U.S. at 150-51. In general, the court's responsibility "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 152.

Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. Fed. R. Evid. 702; Smith, 495 F.3d at 227. Among the factors to be considered in determining reliability of scientific testimony are: 1) the extent to which the theory can be tested or has been tested; 2) whether the theory has been subject to peer review and publication; 3) potential rate of error for the technique used and the existence of standards and controls; and 4) whether the underlying theory or technique is generally accepted as valid by the relevant scientific community. Daubert, 509 U.S. at 593-94. These factors are

"neither exclusive nor dispositive," and the factors that are relevant will vary from expertise to expertise and case to case. See Fed. R. Evid. 702, Advisory Committee Notes.

The expert's methodology must be scientifically grounded and cannot be based on mere conjecture or speculation. See Daubert, 509 U.S. at 590. If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Fed. R. Evid. 702, Advisory Committee Notes.

To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; Daubert, 509 U.S. at 591. That is, it must have the tendency to make any material fact "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see also Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007)(quoting Daubert, 509 U.S. at 593, as stating that relevance relates to whether the reasoning or methodology is a proper fit with the facts of the case).

The bottom line is:

> The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so

grounded.

Fed. R. Evid. 702, Advisory Committee Notes.

### III. Analysis

Defendants challenge the testimony of Barnes with regard to his valuation of actual damages on all three prongs of the analysis: qualifications, reliability, and relevance.  Defendants argue that Barnes is not qualified as a motion picture industry expert, that he lacked key documents and deposition testimony at the time he formulated his opinions, that he used an improper method of assessing actual damages, and that he included in the actual damages speculative profits from movies based on books that are not at issue in the lawsuit and as to which no written agreements to make movies ever existed.

**A. Qualifications**

The court turns first to Barnes' qualifications.  Although Barnes lacks any specific training and has limited experience in the valuation of feature films, he possesses a significant amount of experience generally in the valuation of businesses and other commercial ventures and specifically in damage assessment related to intellectual property infringement.  According to his curriculum vitae, he has assessed copyright infringement damages related to the entertainment industry and screenplays.  In the preparation of his report, Barnes complemented his training in accounting and financial forensics and his experience in valuing intellectual

11

property with print media and internet resources on intellectual property damages and entertainment industry revenue research and projection.

The court finds that Barnes has demonstrated sufficient training and experience to qualify him as an expert capable of offering an opinion on the damages Plaintiff suffered as a result of the alleged copyright infringement.

**B.  Reliability**

The issue of greatest concern to the court with regard to the reliability of Barnes' report is that a bulk of the opinions are based largely on speculation.  Behave Productions, Inc., contracted for an option to produce one or more movies based on <u>The Maintenance Man: Sometimes Women Need a Little Fix</u> and <u>The Maintenance Man: It's Midnight, Do You Know Where Your Woman is?</u>. As of the date of Barnes' supplemental report, that option had not been exercised.

A fact issue exists whether Defendants' alleged infringement caused the delay in the production of one or more movies based on <u>The Maintenance Man</u>.  If Plaintiff is able to prove that it did, he may introduce evidence of the damage he suffered as a result. Despite the lack of certainty with regard to the production of one or more movies arising out of the option contract, the existence of a contract provides sufficient factual support for Barnes' opinions as to <u>The Maintenance Man</u> movies.

The other three movies are a different story. Based on the existence of the option contract and Plaintiff's assertion that Defendants' alleged infringement impacted the ability to develop feature films based on his other novels, Barnes reached the conclusion that Plaintiff suffered actual damages in the millions of dollars from lost profits related to three additional unmade movies.

To reach that conclusion, Barnes necessarily followed a long string of assumptions, including that the option would have been exercised on The Maintenance Man, that The Maintenance Man movie(s) would have been successful, that Baisden himself would have been offered and would have accepted movie deals on each of his other three books. On top of those assumptions, Barnes speculates what the terms of those contracts would be, how vast the distributions of the movies would be, what the budgets would be, how successful the movies would be, how much each movie would realize in profits, and what percentage of the profits would reach Plaintiff individually, among other things.

Granted, Barnes based his opinions regarding distribution, budget, and profit on data for what he determined to be movies of similar ilk; however, that slight anchoring of his opinions to reality will not hold them steady against a sea of speculation. Cf. Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 668 (5th Cir. 1999)(stating that the expert's opinions must be based on "more

13

than unsupported speculation or subjective belief"); Hollywood Fantasy Corp. v. Gabor, 151 F.3d 203, 213 (5th Cir. 1998)(quoting Tex. Instruments v. Teletron Energy Mgmt., 877 S.W.2d 276, 279 (Tex. 1994), and explaining that recoverable lost profits do not include "[p]rofits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, . . . or on the success of a new and unproven enterprise").

    Defendants' other two challenges to reliability, that Barnes lacked important evidence and that he employed an improper method for calculating actual damages under the Copyright Act, do raise concern but do not warrant exclusion of his testimony.  As to the former, Defendants point out that Barnes did not consider deposition testimony that indicated the option to make The Maintenance Man movie remains viable and the movie still could be developed and produced.  Defendants also note that Barnes did not take into consideration the operating agreement for the Farcor Baisden Partnership, the party that entered the contract with Behave Productions, Inc.  The operating agreement divides profits equally between Farcor Studios, LLC, and Baisden Filmworks, LLC, according to Defendants.  These are significant facts that potentially undermine Barnes' conclusions.  Yet, they are facts that, if proven at trial, are fodder for cross-examination and go to the weight of Barnes' testimony.

The latter issue concerning the proper method of calculation also does not render Barnes' report useless.  The Copyright Act allows the recovery of actual damages and additional profits of the infringer or statutory damages as remedies for infringement.  17 U.S.C. § 504(a).  It states: "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).

Defendants take issue with Barnes' failure to base his damage assessment on the injury to the fair market value of the copyrighted work.  They contend that by focusing solely on lost profits and not lost value to the copyrights, Barnes' calculations include damages, such as lost profits from script writing services and from the production of movies based on works not in issue, that have nothing to do with the value of the copyrights.  What Defendants fail to do is to cite the court to binding authority that limits the assessment of damages to the loss in fair market value of the copyright. Certainly, the statutory language is broad enough to allow Barnes' method of calculation.  <u>Cf.</u> Fed. R. Evid. 702, Advisory Committee Notes (citing <u>Heller v. Shaw Indus.</u>, 167 F.3d 146, 160 (3$^d$ Cir. 1999)b as explaining that expert testimony should not be excluded simply because the expert chose one test over another when both are acceptable).

Barnes' testimony on lost profits from the failure to produce <u>The Maintenance Man</u> movies is the only portion of his actual damages calculation that survives the reliability challenge.

**C.  Relevance**

Another problem with Barnes' assessment of actual damages is that he included profits from movies based on three of Plaintiff's books that are not even at issue in this lawsuit.

Plaintiff's live pleading charges Defendants with infringement of Plaintiff's copyrights on two novels:  <u>The Maintenance Man</u> and <u>Men Cry in the Dark</u>.  With reference to the former, the complaint fails even to suggest that the name is the main title for two separate novels.  In fact, the complaint states that Plaintiff had authored a total of only four books, not five.[19]  The complaint specifically refers to the option contract for the development of "*a* full-length motion picture based on <u>The Maintenance Man</u> *novel*," not two movies based on the two <u>The Maintenance Man</u> novels.[20]  In a subsequent paragraph, the complaint alleges that Defendants' actions caused an indefinite delay in the "development of movie [sic] based on <u>The Maintenance Man</u> *novel* and [the option holder] has failed to date to exercise its option to develop *the movie*."[21]  Plaintiff did not allege any damage from the failure of the

---

[19]   See Plaintiff's Corrected Third Amended Complaint, Docket Entry No. 154, ¶ 9.

[20]   Id. at ¶ 22 (emphasis added).

[21]   Id. at ¶ 24 (emphasis added).

16

production of any other feature film based on any other book.

Attached to Plaintiff's opposition to Defendants' previously addressed partial summary judgment motion is Plaintiff's affidavit asserting that he is "the author of a number of books, including The Maintenance Man and Men Cry in the Dark and ha[s] a [sic] federal copyright registration on these *two* works."[22]  As further confirmation that no other novels (or movies based on other novels) are in issue in this lawsuit, the court notes that evidence from a merchandiser's website advertising the video recording of The Maintenance Man stageplay stated, exactly as written here, that the stageplay was based on Plaintiff's novel "The Maintenance Man . . . . It's Midnight . . . Do you know where your woman is?."[23] Plaintiff's allegations of copyright infringement related to The Maintenance Man are based on the sales of those video recordings. Plaintiff has made no accusation that Defendants infringed The Maintenance Man:  Sometimes Women Need a Little Fix copyright or that The Maintenance Man stageplay was based on two novels of that name.

The pleadings and evidence in this case clearly demonstrate that only two novels are at issue in this action: The Maintenance

---

[22] Appendix to Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 80, Plaintiff's Affidavit dated Apr. 23, 2009, ¶ 3 (emphasis added).

[23] Plaintiff's Supplemental Summary Judgment Evidence Submitted Pursuant to Court Order, Docket Entry No. 140, Ex. 1, Affidavit of Pamela Exum, Ex. B, webpages from the website LittleAfrica.com.

Man and Men Cry in the Dark.  The court finds no rational connection between the infringement of the copyrights on The Maintenance Man and Men Cry in the Dark and the production of movies based on Plaintiff's other novels.  Information about profits that Plaintiff could have realized if movies had been produced from Plaintiff's other novels will not assist the trier of fact in determining Plaintiff's actual damages based on the allegations in this lawsuit.  Cf. Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.")

Barnes' opinions on the damages related to the failure to make movies based on The Maintenance Man:  Sometimes Women Need a Little Fix, God's Gift to Women, and Never Satisfied: How and Why Men Cheat are completely irrelevant (as well as speculative).  Because the court found that Barnes' testimony regarding lost profits from a Men Cry in the Dark movie is too speculative to be reliable, the testimony is excluded even though it is relevant.  Therefore, only the testimony on a movie based on The Maintenance Man is relevant.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to exclude a portion of Barnes' expert testimony.  Barnes' testimony concerning Plaintiff's actual damages is excluded to the extent of his opinions on profits from movies based on Men Cry in the Dark, The Maintenance Man:  Sometimes Women

<u>Need a Little Fix</u>, <u>God's Gift to Women</u>, and <u>Never Satisfied: How and Why Men Cheat</u>.

**SIGNED** in Houston, Texas, this 7th day of May, 2010.

_____
Nancy K. Johnson
United States Magistrate Judge