IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL BAISDEN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| I'M READY PRODUCTIONS, INC., | § | CIVIL ACTION NO. H-08-0451 |
| IMAGE ENTERTAINMENT, INC., | § | |
| A.L.W. ENTERTAINMENT, INC., | § | |
| JE'CARYOUS JOHNSON, and | § | |
| GARY GUIDRY, | § § | |
| Defendants. | § § | |

## JURY CHARGE

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

1

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or

2

simply an innocent lapse of memory;  and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert

witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

The Plaintiff in this case is Michael Baisden.  The Defendants are I'm Ready Productions, Inc. ("IRP"), and its principals Gary Guidry and Je'Caryous Johnson.  The other Defendants are A.L.W. Entertainment, Inc. owned by Al Wash, and Image Entertainment, Inc.

For convenience,  from now on I will refer to all of the defendants collectively as simply "Defendants."  If I want to refer to only one or fewer than all of the Defendants, I will use its or their full name.

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

In this case, the Plaintiff must prove every essential part of his claims by a preponderance of the evidence.

Defendant IRP has raised some of its own claims.  As to those claims, IRP must prove every essential part of its claims by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the party's claim is more likely true than not true.

Plaintiff Michael Baisden owns a copyright in his novels *Men Cry in the Dark* and *The Maintenance Man*.  A copyright grants the owner exclusive rights to do any of the following: reproduce, distribute, perform, or display the copyrighted work.  A copyright also grants the

owner exclusive rights to create a new work that is based upon the copyrighted work.   The new work is called a "derivative work."  Because these rights are exclusive, if someone else takes one of these actions, they are said to have "infringed" the copyright.   Plaintiff here alleges that Defendants have infringed his copyright in his novels *Men Cry in the Dark* and *The Maintenance Man*.

A copyright automatically exists in a work the moment it is created. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work..

Copyright protection does not extend to all the elements of a copyrighted work. Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter."  Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.  Usually the literal text of a work is protected matter, but there are some circumstances in which it is unprotected.  The non-literal elements of a work may, depending on the circumstances, be protected or unprotected matter.

There are various types of unprotected matter.  They include:

(1)     A portion of a work that is not original to the author;.

(2)     A portion of the work that is in the public domain;

(3)     An idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work;

(4)     Expressions that are standard, stock or common to a particular subject matter;

(5)     Content (usually fictional) that is unprotected under the doctrine of scènes

à faire.[1]

I will describe these types of unprotected matter further in other instructions.

In copyright law it is important to distinguish between the ideas in a work and the literal text or other means by which the ideas are expressed. The ideas in a work are unprotected matter. However, an idea must be expressed in some way, and the "expression" or "means of expression" of an idea is protected matter. An example of an idea in a work is boy meets girl, parents disapprove, separate boy and girl, and boy and girl become distraught. An example of expression of that idea can be found in Shakespeare's *Romeo and Juliet*,

In other words, the author of a work has no exclusive right to the ideas, concepts, principles, discoveries, facts, actual events, processes, or methods expressed in or described, depicted, or implemented by a work. The author's copyright does extend, however, to the means by which such content is expressed, described, depicted, implemented, or otherwise communicated in the work.

The literal text of a work is a means of expressing its ideas and other content. Non-literal elements in a work, such as the plot and characters in a fictional work, may also be means of expression of ideas or other content. Under the doctrine of scènes à faire, which means stage setting, a standard or typical theme, setting, or background that is common to a large number of works, such as a common plot device, is unprotected matter that may be copied. The doctrine applies to plot devices, incidents, characters, or settings that are, as a practical matter,

---

[1] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §§1.4.2-1.4.3 (2008).

indispensable, or at least standard, in the treatment of certain subjects.   Therefore, copyright protection ordinarily extends to the literal text of a work and frequently extends to the non-literal elements of a work, depending on the nature of the work and of those elements.[2]

Plaintiff claims that Defendants infringed his copyright in two fictional works. Copyright does not extend to the ideas in a fictional work, but it extends to their means of expression.   Ideas can be expressed in a fictional work by the literal text but also by non-literal elements, such as the plot.   If we describe the story in general terms, in most cases it would constitute an idea and therefore not be protected by copyright.   But at more detailed levels, the story told by a fictional work, including the detailed plot, characters, and setting, or means of expression of the story's ideas and so are protected matter.

There is no sharp line that separates the level of ideas from lower levels of detail that are entitled to copyright protection, but the guiding principle of the distinction is that ideas, even if they are original, represent building blocks that may be used by anyone to create other works. Often story patterns at the level of ideas are not original, but even if the ideas in a work are original, copyright law permits them to be copied so that other authors may use them.[3]

As stated earlier a copyright grants the owner exclusive rights to do any of the following:

(1)      reproduce the copyrighted work;

(2)      prepare derivative works based upon the copyrighted work;

---

[2] <u>ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation</u>  §§1.4.4 (2008).

[3] <u>ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation</u>  §§1.4.5 (2008).

(3)     distribute copies of the copyrighted work to the public by sale or other transfer of ownership or by rental or lease or lending;

(4)     perform publicly a copyrighted literary work, musical work, dramatic work, choreographic work, pantomime work, motion picture or other audiovisual work;

(5)     display publicly a copyrighted literary work, musical work, dramatic work, choreographic work, pantomime work, pictorial work, graphic work, sculptural work, the individual images of a motion picture or other audiovisual work; and

(6)     perform a sound recording by means of digital audio transmission.

An owner may enforce his rights to exclude others in an action for copyright infringement.

To prevail on his copyright infringement claim, Baisden must prove two different elements:

(1)     that he owns a valid copyright in the work,

(2)     that Defendants copied constituent elements of Mr. Baisden's work that are original.

The first element, proof of ownership, is agreed, *i.e.* the parties agree that Mr. Baisden owns  a valid copyright in the novels *Men Cry in the Dark* and *The Maintenance Man*.

The second element, proof that defendants copied constituent elements of Mr. Baisden's work that are original, is shown by proof the Defendants

(1)     factually copied Mr. Baisden's copyrighted work; and

(2)     the copied work is substantially similar to the original copyrighted work.

The parties do not dispute that IRP and Je'Caryous Johnson factually copied parts of Baisden's novels *Men Cry in the Dark* and *The Maintenance Man* for the purpose of creating the stage plays of the same names and that the videos are recordings of those stage plays.

Mr. Baisden must prove that his copyrighted work and any copies or derivative works made by the Defendants are substantially similar.  Two works are substantially similar if the expression of ideas in the plaintiff's copyrighted work and the expression of ideas in the defendants' work that are shared are substantially similar.  The test for expression of ideas is whether the intended audience would find the total concept and feel of the original work and the copied work to be substantially similar.[4]  A side-by-side comparison must be made between the original and the copy to determine whether the intended audience would view the two works as substantially similar.

The parties have stipulated, as to both of Mr. Baisden's novels, that there are substantially similar elements in the stage plays and videos of the same names.  But the parties disagree that the copied works are substantially similar to the original works.

Copyright law allows a copyright owner to transfer, sell, or convey to another person any of the rights included in the copyright. The owner of any particular right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner.

A claim for copyright infringement is barred if a defendant has an express or implied license authorizing use of the copyrighted work.  Defendants contend that Baisden gave them a license to use the copyrighted works.  An exclusive license must be in writing.  A nonexclusive

---

[4]Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 373 (5th Cir. 2004), abrogated on other grounds recognized by Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237 (2010)

implied license is created when the totality of the parties' conduct indicates an intent to grant permission to use a work.  A nonexclusive license does not have to be in writing, and may be granted orally or implied by the parties' conduct.[5]  The burden is on Defendants to prove the existence of a license by a preponderance of the evidence.  If Defendants satisfy this burden, then in order for Baisden to prevail, Baisden must prove by a preponderance of the evidence that Defendants' copying was not authorized by the license.[6]

Michael Baisden contends that Defendants have engaged in contributory infringement of his copyrights in *Men Cry in the Dark* and *The Maintenance Man*.  Contributory infringement is a distinct claim from direct infringement.  To prove contributory infringement, plaintiff must prove the following three elements by a preponderance of the evidence:

(1)   Another  defendant in this case—IRP— directly infringed plaintiffs' copyright;

(2)   Defendant knew or should have known of the infringing activity of the direct infringer; and

(3)   Defendant induced, caused, or materially contributed to the infringing activity of the direct infringer.[7]

---

[5]Carson v. Dynegy, Inc., 344 F.3d 446, 451 & n. 5 (5th Cir. 2003)

It is well-established in this circuit that a nonexclusive implied license need not be evidenced by a writing; rather, such a license may be implied from conduct or granted orally.  Lulirama Ltd., Inc. v. Axcess Broadcast Sys. Inc., 128 F.3d 872, 879 (5th Cir. 1997) ("While the Copyright Act requires that exclusive licenses be evidence[d] by a writing, no such writing requirement applies to nonexclusive licenses.").  As the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement, Dynegy bears the burden of proving that such a license exists.  Lulirama, 128 F.3d at 884 (citing CMS Software Design Syst., Inc. v. Info Designs, Inc., 785 F.2d 1246, 1248 (5th Cir. 1986)).

[6]ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation  §§1.6.2 (2008).

[7]Direct infringement is a prerequisite for finding contributory infringement.  The direct infringer must be named. The language used here is from the ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §§1.5.12 (2008).

If the plaintiff fails to prove any of these elements, you should find for the defendants.

Michael Baisden contends that Defendants vicariously infringed plaintiff's copyright. Vicarious infringement is a distinct claim from direct infringement and contributory infringement.   To prove vicarious infringement, plaintiff must prove the following three elements by a preponderance of the evidence:

(1)     Another defendant in this case—IRP— directly infringed plaintiffs' copyright;

(2)     Defendant profited from or had a financial interest in the infringing activities of the direct infringer; and

(3)     Defendant had the right and ability to supervise or control the infringing activities of the direct infringer.

If plaintiff fails to prove any of these elements, you should find for defendant.  However, if plaintiff proves these elements, he need not prove that defendant knew of the infringement.[8]

In a copyright infringement action, a three year statute of limitations bars recovery of any claims based on damages accruing more than three years before the complaint was filed.  In determining whether Defendants infringed upon Baisden's copyright and, if so, what damages Baisden is entitled to recover, you may only consider events occurring after certain dates.

You may consider the performances of the *Men Cry in the Dark* stageplay that occurred on and after November 4, 2005, the sales of video recordings of the *Men Cry in the Dark* stageplay that occurred on or after November 4, 2005, and proceeds from the 2005 tour of *Men Cry in the Dark* that occurred after November 4, 2005.

---

[8]Direct infringement is a prerequisite for finding vicarious infringement.  The direct infringer must be named.  The language used here is from the ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §§1.5.123(2008).

If you find that Baisden and IRP did not enter into a contract concerning *The Maintenance Man* in December 2002, then you may consider the sales of video recordings of *The Maintenance Man* stageplay that occurred on or after July 25, 2005.   If you find that Baisden and IRP did enter into a contract concerning *The Maintenance Man* in December 2002, you may consider the sales of video recordings of *The Maintenance Man* that occurred on or after December 2005.

If you find that defendant has infringed plaintiff's copyright, then plaintiff may recover his actual damages, plus defendant's profits attributable to infringement.

Actual damages are intended to compensate a copyright owner for losses due to the infringement. Actual damages include any profits plaintiff may have lost due to the infringement, including but not limited to sales of the copyrighted work, and/or a reasonable license fee that defendant would have or should have paid for the use. You should broadly construe actual damages to favor victims of infringement, keeping in mind that a principal objective of copyright law is to enable creators to earn a living through the sale or licensing of their copyrighted works.

In addition to his actual damages, plaintiff also is entitled to defendant's profits that are attributable to the infringement, to the extent not already taken into account in computing plaintiff's actual damages. If defendants' profits have been accounted for in the award of actual damages, to avoid double recovery, a separate award of defendant's profits should not be made.

In establishing the amount of defendant's profits, plaintiff is required to present proof only of defendant's gross revenue and that there is some reasonable relationship, either direct or indirect, between those revenues and the infringement. Once these two elements are established,

the burden of proof then shifts to defendant to reduce this amount. Defendant must then prove, by a preponderance of evidence, the amount of his deductible expenses, and other elements of profit attributable to factors other than the infringement.  In other words, you are to calculate the profits attributable to the infringement, if you find any, as defendant's gross revenues proven by plaintiff, less the costs and other elements that defendant proves are related to factors other than infringement. Such costs and other deductible amounts may include, for example, a reasonable portion of overhead expenses such as rent, marketing, and other business costs that are related to the production of the infringing product.[9]

Defendants contend that Baisden's claims for copyright infringement are barred by the doctrine of "equitable estoppel."  Under the doctrine of equitable estoppel, Baisden's claims for copyright infringement are barred if Defendants prove by a preponderance of the evidence that:

(1)    Baisden knew the facts of the Defendants' infringing conduct;

(2)    Baisden intended that his conduct be acted on or acted in such a way that the Defendants had a right to believe that Baisden so intended;

(3)    The Defendants were ignorant of the true facts; and

(4)    The Defendants relied on Baisden's conduct to their detriment.[10]

Plaintiff's misappropriation of name claims are based on allegations that the defendants misappropriated his name to sell goods thereby misleading customers as to the source or approval of the goods and depriving Plaintiff of the ability to profit from his name..  To prove that Defendants misappropriated his name, Plaintiff must show that:

---

[9]ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation  §§1.7.3 (2008).

[10]Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003).

(1)     Defendants misappropriated Plaintiff's name for the value associated with it and

        not in an incidental manner or for a newsworthy purpose;

(2)     Plaintiff can be identified from the publication; and

(3)     Defendants derived some advantage or benefit.

If you decide that Plaintiff has proved his claim against Defendants for unfair

competition by misappropriation of Plaintiff's name, you must also decide how much money

will reasonably compensate Plaintiff for his damages, if any, that naturally and proximately

resulted from the Defendants' improper use of his name..  In calculating these damages, you may

consider only the value of Baisden's name, had it been sold on the market to promote the

videos.[11]

Defendants contend that Baisden's claims for misappropriation of name are barred by

"equitable estoppel."  The elements of "equitable estoppel" are different for a misappropriation

claim.  Baisden's claim for misappropriation of his name is barred by "equitable estoppel" if

Defendants prove by a preponderance of the evidence that:

(1)     Baisden

        a.      by words or conduct made a false representation or concealed

                material facts,

        b.      with knowledge of the facts or with knowledge or information that

                would lead a reasonable person to discover the facts, and

---

[11]Brown v. Ames, 201 F.3d 654, 662 (5th Cir. 2000) ("In a misappropriation of name or likeness action, a plaintiff
may recover general damages plus any proven special damages. . . General damages are those which naturally,
proximately, and necessarily result from the improper communications.").

      c.     with the intention that Defendants would rely on the false representation or concealment in acting or deciding not to act; and

(2)    Defendants

      a.     did not know and had no means of knowing the real facts and

      b.     relied to their detriment on the false representations or concealment of material facts.[12]

Michael Baisden's conspiracy claim is based on allegations that the Defendants conspired to misappropriate his name to sell goods thereby misleading customers as to the source or approval of the goods and depriving Plaintiff of the ability to profit from his name. A conspiracy occurs when two or more Defendants or a Defendant and another person or persons had knowledge of, agreed and intended a common objective or course of action that resulted in the damages to Plaintiff. To be liable for conspiracy, a party must be shown to have intended to do more than engage in the conduct that resulted in the damages to Plaintiff. It must be shown that from the inception of the combination or agreement the party intended to cause the injury or was aware of the harm likely to result from the wrongful conduct. Thus, a party must be shown to have known the object and purpose of the conspiracy and to have had a meeting of the minds with the other conspirators to accomplish that object and purpose, intending to bring about the resulting injury. The Defendants' intent can be proven by circumstantial evidence and reasonable inference. The evidence in the case need not show the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which

---

[12]Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 101.25 (2010).

16

the object or purpose was to be accomplished.  One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.[13]

Defendants contend that Baisden waived his claims for copyright infringement, misappropriation, and conspiracy because he knew that IRP was creating and selling video recordings of the stage play, but did not complain or demand royalties.  Defendants also contend that Baisden waived his claim that the 2005 *Men Cry in the Dark* tour was unauthorized. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.[14]  Waiver contains the following elements:

(1)    a right must exist at the time of the waiver;

(2)    the party who is accused of waiver must have constructive or actual knowledge of the right in question; and

(3)    the party intended to relinquish its right.

Defendant IRP must prove this defense by a preponderance of the evidence.

Defendants contend that Baisden's claims for copyright infringement, misappropriation, and conspiracy are barred because the doctrine of "quasi-estoppel" prohibits Baisden from denying the validity of his agreements with IRP.  Defendants also contend that the doctrine "quasi-estoppel" prohibits Baisden from claiming that the video recordings were unauthorized. The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken.  The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he

---

[13]This language is from Plaintiff Michael Baisden's Supplemental Jury Charge Submission and The Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 109.1 Question and Instruction on Conspiracy (2010).

[14]Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 101.24 (2010).

acquiesced, or from which he accepted a benefit.[15]   "Unconscionable" means grossly unfair or unjust.[16]  Defendants must prove this defense by a preponderance of the evidence.

Defendants contend that Baisden' claims for copyright infringement and misappropriation of his name are barred by the doctrine of laches.   To establish laches, Defendants must prove by a preponderance of the evidence that:

(1)     Baisden delayed in asserting his rights;

(2)     there is no excuse for the delay; and

(3)     Defendants were unduly harmed by the delay.

Defendants must prove this defense by preponderance of the evidence.

Plaintiff contends that he agreed to the terms of the March 9, 2001 agreement, but denies that he signed the agreement which is in evidence as Defendants' Exhibit No. 8.  The parties agree that Baisden and IRP executed a written agreement in July 2002 for the creation of a stage play based on *The Maintenance Man*.  The parties dispute whether Baisden and IRP executed a written agreement in December 2002 for the creation of a stage play based on *The Maintenance Man*.  The parties also dispute whether Baisden and IRP entered an oral agreement in December 2005 to revive or extend the *Men Cry in the Dark* agreement.  In deciding whether Baisden and IRP reached these agreements, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing.  You may not consider the parties' unexpressed thoughts or intentions.[17]

---

[15]Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857 (Tex. 2000) (quoting Atkinson Gas Co. v. Albrecht, 878 S.W.2d 236, 240 (Tex.App.—Corpus Christi 1994, writ denied).

[16]Stinnett v. Colorado Interstate Gas Co., 227 F.3d 247, 259 (5th Cir. 2000).

[17]Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 101.3 (2010).

Plaintiff alleges that IRP failed to comply with the July 2002 *The Maintenance Man* contract by failing to compensate him for the sale of video recordings of *The Maintenance Man* on or after February 7, 2004.

To prevail on a claim for breach of contract Plaintiff must show:

(1)     the existence of a valid contract,

(2)     performance or tendered performance by the plaintiff,

(3)     breach of contract by the defendant, and

(4)     damages sustained by the plaintiff as a result of the breach.

If you decide that Plaintiff has proved his breach of contract claim against IRP, you must also decide what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff for his damages that resulted from Defendants failure to comply with the agreement(s).  Consider the following element of damages, if any, and no other: The difference, if any, between the amounts that Baisden was due under the agreements for the sale of video recordings of *The Maintenance Man* on or after February 7, 2004, and the amount that IRP paid Baisden for these video recordings.[18]

Baisden claims actual damages for breach of contract from the alleged loss or delay of a motion picture based on *The Maintenance Man*.  If you find that any Defendants' infringement of the *Maintenance Man* copyright caused the loss or delay of a *Maintenance Man* motion picture, then you may award actual damages suffered as a result of that infringement.

---

[18]Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 115.3 Question and Instruction on Conspiracy (2010).

If you find that any party is liable, then you must determine an amount that is fair compensation for damages.  These damages are called compensatory damages.  The purpose of compensatory damages is to make the plaintiff whole—that is, to compensate a party for the damage that it has suffered.  You may award compensatory damages only for injuries that a party proves were proximately caused by the allegedly wrongful conduct.  The damages that you award must be fair compensation for all of the party's damages, no more and no less.  Damages are not allowed as a punishment and cannot be imposed or increased as a penalty.  You should not award compensatory damages for speculative injuries, but only for those injuries which the party has actually suffered or that the party is reasonably likely to suffer in the future.  If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that a party prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.  If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled.  You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.  It is your task first to decide whether the defendant is liable.  I am instructing you on damages only so that you will have

guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find a defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

You must not award compensatory damages more than once for the same injury. For example, if the plaintiff prevails on two claims and establishes a dollar amount for his injuries, you must not award him any additional compensatory damages on each claim. The plaintiff is only entitled to be made whole once, and may not recover more than he has lost. Of course, if

different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all his injuries.

You may impose damages on a claim solely upon the defendant or defendants that you find are liable on that claim. Although there are five defendants in this case, it does not necessarily follow that if one is liable, all or any of the others also are liable. Each defendant is entitled to fair, separate and individual consideration of his case without regard to your decision as to the other defendants. If you find that only one defendant is responsible for a particular injury, then you must award damages for that injury only against that defendant.

Plaintiff claims that IRP was organized and operated as a mere tool or business conduit of Defendants Gary Guidry and Je'Caryous Johnson. Plaintiff claims that there was such unity between IRP and Gary Guidry and Je'Caryous Johnson that the separateness of IRP had ceased and holding only IRP responsible would result in injustice. Plaintiff claims that Gary Guidry and Je'Caryous Johnson caused IRP to be used for the purpose of perpetrating and did perpetrate an actual fraud on Plaintiff primarily for the direct personal benefit of Gary Guidry and Je'Caryous Johnson. Actual fraud is conduct involving either dishonesty of purpose or intent to deceive. In deciding whether there was such unity between IRP and Gary Guidry and Je'Caryous Johnson that the separateness of IRP had ceased, you are to consider the total dealings of IRP and Gary Guidry and Je'Caryous Johnson, including—

(1)     the degree to which IRP's property had been kept separate from that of Gary Guidry and Je'Caryous Johnson;

(2)     the amount of financial interest, ownership, and control Gary Guidry and Je'Caryous Johnson maintained over IRP; and

(3)     whether IRP had been used for personal purposes of Gary Guidry and Je'Caryous Johnson.[19]

Plaintiff claims that Defendants Gary Guidry and Je'Caryous Johnson are personally liable for debts that IRP incurred during any period that IRP's corporate franchise lapsed due to failure to file franchise tax reports or failure to pay franchise taxes.  In order to hold Defendants Guidry or Johnson personally liable for such debts you must find that (1) that there was a specific period of time during which IRP's corporate franchise lapsed due to the failure to file franchise tax reports or the failure to pay franchise taxes, and (2) that Defendants Guidry or Johnson were officers of IRP during the period that the corporate franchise lapsed.

IRP has also asserted counter-claims against Baisden.  IRP contends that Baisden and IRP entered into an agreement concerning *The Maintenance Man* in December 2002, and that Baisden failed to comply with the Agreement by failing to pay IRP $300,000 or more after conveying motion picture rights of *The Maintenance Man* to Farcor Baisden and Screen Gems.

IRP contends that, if the parties did not enter into an agreement concerning *The Maintenance Man* in December 2002, then Baisden failed to comply with the July 2002 Agreement concerning *The Maintenance Man* by failing to provide just and fair compensation to IRP after negotiating agreements to transfer the motion picture rights of *The Maintenance Man* to Farcor Baisden and Screen Gems.

If you decide that IRP has proved its breach of contract claim against Baisden, you must also decide what sum of money, if any, if paid now in cash, would fairly and reasonably

---

[19]Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 108.2 Question and Instruction on Conspiracy (2010).

23

compensate IRP for its damages that resulted from Baisden's failure to comply with the contract(s).  Consider the following element of damages, if any, and no other: The difference, if any, between the amounts that IRP was due under the contracts for the transfer of motion picture rights of *The Maintenance Man* and the amounts that IRP actually received.[20]  A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.  I have already explained above the duty to mitigate and  the considerations that you should make in awarding damages for breach of contract.

Baisden has asserted that IRP is precluded from recovery under the agreements because IRP it has waived any right to recovery.  I have already explained above the elements of waiver.  Before you consider this affirmative defense, you must first decide whether IRP has proved by a preponderance of the evidence that it is entitled to recovery.

Baisden has asserted that IRP is precluded from recovery under any alleged agreement because of its prior breaches of the agreements.  Before you consider this affirmative defense, you must first decide whether Defendant IRP has proved by a preponderance of the evidence that it is entitled to recover.

A party to a contract who breaches it cannot maintain a suit against the other party for its breach.  Therefore, Baisden claims that since IRP breached the contracts, it cannot maintain any claim against Baisden.

---

[20]Texas Pattern Jury Charges Business, Consumer, Insurance, Employment, § 115.3 Question and Instruction on Conspiracy (2010).

24

Baisden's failure to comply with his contractual duties is excused, if you find by a preponderance of the evidence that IRP previously failed to comply with a material obligation of the same agreement  or IRP waived compliance.

In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Good faith performance or enforcement of an agreement emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.  Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose and freedom from intention to defraud.  It means being faithful to one's duty and obligation under the agreement.

However, if you find that IRP previously failed to comply with a material obligation of the Parties' Agreement but that IRP's previous failure to comply was waived by Baisden, then you should not find that Baisden's breach was excused.  The concept of waiver has already been explained.

**SIGNED** at Houston, Texas, this __th day of February, 2011.

_____<br>
Sim Lake<br>
United States District Judge